IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

COST RECOVERY SERVICES LLC,

    Plaintiff,

v.                                                       CASE NO. 1:02-cv-00131-MP-AK

ALLTEL COMMUNICATIONS INC,

    Defendant.

_____/

## **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

        This matter came before the Court for a bench trial on October 3-4, 2006.  The Court, having received and reviewed the evidence presented, the argument of counsel and the full record in this case, and being otherwise duly advised in the premises, finds as follows.

        This case arises out of a contract between plaintiff, Cost Recovery Services, L.L.C. ("CRS") and defendant, Alltel Communications, Inc. ("Alltel").  Alltel is in the business of providing wireless telecommunications service.  In the conduct of its business, Alltel purchases access to long distance telephone service from other telephone companies such as AT&T, Bell South and Sprint, and these companies bill Alltel for that access.  Historically it is not uncommon to find errors in the bills sent from one company to another.  Thus, prior to March 7, 2000, Alltel initiated an in-house audit in an attempt to verify the accuracy of the invoices received from these carriers.  Also, on March 7, 2000, Alltel and CRS entered into a contract whereby CRS was retained to conduct an audit of certain phone bills relating to Alltel's Gainesville, Florida market.  Under the contract CRS would be paid on a contingent fee basis based upon credits recovered as a result of CRS's efforts in discovering certain types of cost savings.

Case 1:02-cv-00131-MP-AK   Document 249   Filed 02/20/07   Page 2 of 4

Page 2 of 4

CRS began auditing Alltel's bills in approximately April, 2000, and discovered some billing errors on AT&T invoices. These errors primarily involved tax and "universal connectivity" charges from which Alltel was exempt. CRS contacted AT&T regarding these errors and, in some instances, AT&T issued credits based upon the errors. CRS, in turn, sent Alltel invoices for its contractual fees. Alltel paid these invoices in full and these payments were entered into evidence. Alltel paid CRS a total of approximately $58,000.

In December 2000, however, AT&T issued other credits to Alltel on two accounts known as the "1226 account" and the "3887 account." CRS was not paid for these credits because Alltel asserts that they were expressly excluded by the agreement with CRS and were the result of billing dispute forms submitted to AT&T by Charles Miller, an employee at Alltel's Little Rock headquarters. CRS, however, claims that it is owed fees of $69,634.77 based upon credits issued on these accounts.

The primary issue at this stage of the case is thus whether the two accounts were excluded from the CRS contract at the time of signing. The contract includes a series of blank spaces on page two where the parties were to write in any "audit actions" excluded from the scope of the contract. The parties did not write anything in those spaces at the contract signing. However, Tracy Stamper and Amy Brewer testified that at the time of signing the contract they informed CRS that the 1226 and 3887 accounts were the subject of the in-house Alltel audit and thus outside the scope of the CRS contract. Mr. Stamper and Ms. Brewer further testified that CRS was provided with a spreadsheet listing all the Gainesville office accounts and that Ms. Brewer specifically highlighted the 1226 and 3887 accounts in order to make clear that they were excluded from the CRS audit.

The testimony of Ms. Brewer -- who is no longer affiliated with any party in this case -- and Mr. Stamper is credible and persuasive.  The Court finds that the 1226 and 3887 accounts were highlighted on the spreadsheet as subject to the in-house audit, and thus outside the scope of the CRS contract.  Moreover, the Court finds that the highlighted spreadsheet became a part of the contract and effectively "filled in" the blank spaces on page 2 of the contract identifying excluded audit actions.

Additionally, the Court rejects the assertion that the parole evidence rule bars the consideration of the spreadsheet.  Under Florida law,[1] the parole evidence rule "prohibits the admission of extrinsic evidence of prior or contemporaneous oral agreements, or prior written agreements, to explain the meaning of a contract when the parties have reduced their agreement to an unambiguous integrated writing" (11 Williston on Contracts § 33:1 (4th ed.)).  However, under Rule 1004(1) of the Federal Rules of Evidence, as well as F.S.A § 90.954, "if the party relying upon a writing can prove that the writing existed and has been lost or destroyed, he is relieved of the burden of producing the original and may present any form of secondary evidence to establish its contents, including parole evidence" (83 A.L.R. Fed 554, V. §12). Thus, so long as the writing is not unavailable as a result of bad faith on the part of the proponent of the parole evidence, parole testimony may be offered to prove the contents of the missing writing.  See In re McCollum's Estate, 88 So.2d 537 (1956)(holding that where writing is destroyed by party through accident or mistake, or upon erroneous impression of its effect, or upon other circumstances free from suspicion of intended fraud, there is no impediment to introducing

---

[1] Florida law applies to this diversity matter. See Nasco, Inc. v. Calcasieu Television and Radio Inc., 894 F.2d 696 (5th Cir. 1990).

secondary evidence thereof); Insurance Co. of State of Pa. v. Genova Exp. Lines, Inc., 605 So.2d 941 (Fla App. 3 Dist. 1992)(holding that, since an officer of plaintiff provided a satisfactory, and unchallenged, explanation that the contract had been inadvertently misplaced, the trial court should have admitted parol evidence of its contents); Klein v. Frank, 534 F.2d 1104, 1107-1108 (5th Cir. 1976).

In the present situation the offering party does not seek to alter or add terms to the contract, but rather merely to show the contents of a missing writing that was incorporated into the contract at the time of signing.  Neither the parole evidence rule nor the best evidence rule bar the admission of parole testimony for such a purpose; rather, Fed. R. Evid. 1004(1) and F.S.A. 90.954 expressly permit it for this purpose.  Thus, the Court holds that the parties modified the so-called exclusion provision on page 2 of the contract by attaching a separate spreadsheet instead of filling in the blanks, and that said modification is enforceable.  By the terms of the contract, as modified by the parties, accounts 1226 and 3887 were excluded from the scope of the CRS contract, and plaintiff is thus not entitled to recovery of the $69,634.77 claimed.

Accordingly it is hereby

**ORDERED AND ADJUDGED:**

The Court finds in favor of defendant Alltel and against plaintiff CRS regarding the $69,634.77 claimed on the 1226 and 3887 accounts.

**DONE AND ORDERED** this  _20th_  day of February, 2007

*s/Maurice M. Paul*
Maurice M. Paul, Senior District Judge